DENBY, SECRETARY OF THE NAVY OF THE UNITED STATES, v. BERRY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 47.   Argued October 5, 1923.—Decided November 12, 1923.

1. The act establishing the Naval Reserve Force, (August 29, 1916,) impliedly empowered the President, at his discretion, or the Secretary of the Navy acting for him, to change the status of an officer of that force from active service in the Navy to the status of inactive duty.   P. 32.
2. A mere change of status from active service, to inactive duty in the Naval Reserve Force, is not a retirement within the meaning of Rev. Stats., § 1455, which refers to officers in the Regular Navy; nor under the Acts of July 1, 1918, and June 4, 1920, which made that section applicable to officers on active service in the Reserve Force when disabled in the line of duty.   P. 34.
3. An order of the Secretary of the Navy retiring an officer to inactive duty in the Naval Reserve Force being discretionary, the Secretary cannot be required by mandamus to revoke it, even though based on his erroneous belief that such officer was not entitled under the Acts of July 1, 1918, and June 4, 1920, to be retired on pay when disabled in line of duty.   P. 36.
4. A naval regulation providing that when any officer on the active list becomes physically incapacitated to perform his duties, he will

be ordered before a retiring board (Nav. Reg. 1913, 331 [5]) did not bind the Secretary as a rule of law, under Rev. Stats., § 154, after it was transferred to the instructions to naval retiring boards by order of the President. (Nav. Courts and Boards, 1917, § 679.) P. 37.

5. The right of a naval officer, disabled in the line of duty, to be retired on pay, is dependent by statute on the judgment of the President, not that of the courts; and the remedy of the officer when his application for a retirement board is disapproved by the Secretary, is by appeal directly to the President. (Nav. Ins. 1913, § 5323.)    P. 38.

51 App. D. C. 335; 279 Fed. 317, reversed.

ERROR to a judgment of the Court of Appeals of the District of Columbia, which affirmed, in part, a mandamus issued by the Supreme Court of the District requiring the Secretary of the Navy to revoke an order directing the release of the relator, Berry, from active service in the Navy, and to make an order sending him before a retiring board, with a view to his retirement by the President.

*Mr. George Ross Hull*, with whom *Mr. Solicitor General Beck*, *Mr. Rufus S. Day*, Special Assistant to the Attorney General, and *Mr. George Melling* were on the brief, for plaintiff in error.

*Mr. Daniel Thew Wright*, with whom *Mr. Philip Ershler* was on the brief, for defendant in error.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This was a petition for mandamus filed in the Supreme Court of the District of Columbia by a member and officer of the Naval Reserve Force, as relator, to compel the Secretary of the Navy to revoke an order directing the release of the relator from active service in the Navy and to make an order sending him before a Retiring Board, with a view to his retirement by the President.

The Supreme Court sustained a demurrer to the amended answer of the Secretary and, the latter electing not to plead further, the court issued a mandamus as prayed. The Secretary carried the case on appeal to the Court of Appeals of the District, which affirmed the part of the mandamus directing revocation of the order of release and reversed the part requiring that the Secretary send the relator before a Retiring Board. The Secretary brings this writ of error to the judgment of the Court of Appeals. The case involves the construction of the general statutes of the United States applicable to the Naval Reserve Force and the retirement of its officers. We, therefore, have jurisdiction of the writ under § 250, par. 6, of the Judicial Code.

The relator, being an officer in the Naval Reserve Force, was ordered before a naval board of medical survey, and on October 14, 1919, was found by that board to be under permanent disability which was incurred in line of duty and was not the result of his own misconduct. The board recommended that the relator be sent before a retiring board. The Secretary of the Navy forwarded this recommendation to the Bureau of Navigation, the executive bureau of the Navy, disapproved, and directed that " this officer be ordered to proceed to his home and be released from active duty ". The Bureau of Navigation, on November 17, 1919, accordingly issued to the relator this announcement: " You are hereby detached from such duty as may have been assigned you; you will proceed to your home and regard yourself honorably discharged from active service in the Navy ". The relator wrote to the Secretary of the Navy requesting that his case be referred to a retiring board for consideration, to which the Secretary replied denying the plaintiff's right either to have his case so considered or to be placed on the retired list. The next day, November 18, 1919, this action was brought.

The Court of Appeals held that because the relator as Naval Reserve officer, if disabled in the line of duty, was eligible for retirement under the same conditions as provided for regular naval officers, and because no officer of the Navy could under § 1455, Rev. Stats. be retired from active service or wholly retired without a full and fair hearing before a navy retiring board if he should demand it, the Secretary had retired him from the service in violation of law and that he could be compelled to revoke his action.  This would reinstate him to the status of a Naval Reserve officer in the active service with full pay as such from October 18, 1919.

The Naval Reserve Force was established by the Naval Appropriation Act of August 29, 1916, c. 417, 39 Stat. 556, 587.  By its provisions, the Naval Reserve Force was to be composed of citizens of the United States who by enrollment therein or transfer thereto should obligate themselves to serve in the Navy in time of war or during an emergency declared by the President.  Enrollment was to be for four years.  A clothing gratuity was allowed and retainer pay of $12.00 a year or more according to class was to be paid to those who kept the Secretary advised of their whereabouts.  The same grades and ranks were provided up to the rank of Lieutenant Commander as existed in the rank and file of the Navy.  The President commissioned the commissioned officers.  The Secretary issued warrants to the warrant officers.  During peace or when no national emergency existed, members might be discharged at their own request on return of the clothing gratuity.  Members might be ordered into active service in the Navy by the President in time of war or when in his opinion a national emergency existed, and might be required to perform such service throughout the war or until the national emergency ceased to exist.  Enrolled members were to be subject to the laws, regula-tions and orders for the government of the regular Navy

only during such time as they might be required in the active service. The members of the Force when in active service were entitled to the same pay, allowance, gratuities and other emoluments as men of the same rank or grade in the regular Navy, but when on inactive duty they were entitled only to what was expressly provided in the act. The Secretary of the Navy was to make all necessary and proper regulations not inconsistent with law for the administration of these Naval Reserve Force provisions.

It is quite evident from the foregoing that members of this force occupied two statuses, one that of inactive duty, and the other of active service. It is further clear that it was within the power of the President, and of the Secretary of the Navy acting for him, to change the members of the Reserve Force from one status to the other. The power to call them from inactive duty to actual service was express. The power to order them from actual service to inactive duty was necessarily implied. How this should be done, was within the discretion of the President and his alter ego in the Navy Department, the Secretary. *United States* v. *Jones,* 18 How. 92, 95. The vesting of the right to make regulations to carry out the act in the Secretary shows that he was to act for the President. As a matter of practice in the Department, the method of calling out the members of the Reserve Force, and of sending them back to inactive duty, was by order of the Secretary of the Navy (Gen. Order No. 237 of October 6, 1916) left to the Bureau of Navigation, and under that Bureau mobilization and demobilization of the Reserve Force were carried on under special orders and circulars. Orders releasing individuals from active service and putting them on inactive duty were clearly within the power of the President and of the Secretary of the Navy acting for him in the administration of the

act. Nowhere is there found any limitation upon the discretion of the Executive in this regard. The orders in such cases were in the nature of military orders by the Commander-in-Chief in the assignment or withdrawal of available forces to or from duty for the good of the service. Such orders of withdrawal could not and did not make members of the Naval Reserve Force civilians. They did not release them from obligation under their enrollment to render active service again when ordered to do so by the proper authority. When the Bureau of Navigation detached relator from active duty and told him to go home and regard himself as honorably discharged from active service in the Navy, he was not ousted from the Naval Reserve Force or the Navy. The words "honorably discharged" were only to advise him and others that the change of his status from active to inactive duty was not because of his fault or misconduct.

The Court of Appeals, however, construed this order to be an effort to retire the relator from the Navy in the sense in which that term is used in § 1455, Rev. Stats., which reads as follows:

"No officer of the Navy shall be retired from active service, or wholly retired from the service, without a full and fair hearing before such Navy retiring-board, if he shall demand it, except in cases where he may be retired by the President at his own request, or on account of age or length of service, or on account of his failure to be recommended by an examining board for promotion."

This section was adopted in 1861 (c. 42, 12 Stat. 291,). and applied to regular officers in the Navy. The retirement from active service, and complete retirement provided in the section, are to be understood as they apply to such officers. Officers in the Regular Navy who have become unfit for service before the retiring age are subject to three methods of retirement. One is when the disability is in the line of duty and their retirement pay is

three-fourths of the pay of their rank on active duty. The other two are when the disability is not incurred in line of duty; and in one the retirement pay is furlough or one-half of leave of absence pay of their rank in active service, and in the other there is full retirement to civilian life on a year's full pay of their rank. §§ 1453, 1454, Rev. Stats. Section 1455 was enacted to prevent an abuse of the power of retirement by superior officers. Section 1455, Rev. Stats., has been made applicable to officers on active service in the Naval Reserve Force when disabled in line of duty, first by implication in a proviso of the Act of July 1, 1918, c. 114, 40 Stat. 704, 710, "that no member of the Naval Reserve Force shall be eligible for retirement other than for physical disability incurred in line of duty;" and then, after this suit was brought, by direct provision in Act of June 4, 1920, c. 228, 41 Stat. 834, as follows:

"That all officers of the Naval Reserve Force and temporary officers of the Navy who have heretofore incurred or may hereafter incur physical disability in line of duty shall be eligible for retirement under the same conditions as now provided by law for officers of the Regular Navy who have incurred physical disability in line of duty."

By Act approved July 12, 1921, c. 44, 42 Stat. 122, 140, the above was amended by adding a proviso as follows: *"Provided, however,* That application for such retirement shall be filed with the Secretary of the Navy not later than October 1, 1921." The proviso shows reflexively that Congress had always intended to give one entitled to retirement the right to apply for it.

To be retired from active service under the sections from 1448 to 1455, Rev. Stats., inclusive, means retired with pay and has had this meaning for many years. *Brown* v. *United States,* 113 U. S. 568, 572. To be wholly retired means to be removed from the service entirely on

payment of a lump sum and to become a civilian.  *Miller* v. *United States,* 19 Ct. Clms. 338, 353; 29 Ops. Atty. Gen. 401.  No form of retirement is a removal by way of punishment.  Indeed, § 1456, Rev. Stats., expressly forbids retirement because of misconduct on account of which an officer may be sent before a court martial.  It is very clear, therefore, that a mere change of status from active service to inactive duty in the Naval Reserve Force is not a "retirement" in the meaning of § 1455, Rev. Stats., the Act of July 1, 1918, or that of June 4, 1920.

There was no reason why, after the relator had been ordered to inactive duty in the Naval Reserve Force, he might not have applied for retirement under the provision of the Act of 1918, or later under the Act of June 4, 1920.

But it is said that the Secretary directed the release of the relator from active service and refused him a retiring board because he was of opinion that under the Act of July 1, 1918, and before the Act of June 4, 1920, Reserve Force officers were not entitled to be retired on pay, but that they must apply for the relief extended to persons disabled in the service by §§ 300 and 302 of the War Risk Insurance Act of October 6, 1917, c. 105, 40 Stat. 398, 405, 406.  Because the Secretary gave a wrong reason for his action is not a ground for requiring him by mandamus to revoke the order putting the relator on inactive duty, if he had discretion to do this, as we have found he did have.

Nor was the Secretary of the Navy under obligation to order the relator before a retiring board because a board of medical survey recommended it.

Section 1448, Rev. Stats., provides that whenever an officer reports himself unable to perform his duties or whenever in the opinion of the President he is incapacitated, the President may in his discretion direct the Secretary of the Navy to refer the case to a Retiring Board. By the following sections, 1449 to 1454, the Board is to report its finding as to the incapacity of the officer, and,

if it exists, whether it was an incident of the service. The record is to be transmitted to the Secretary and by him laid before the President, whose approval is necessary to the retirement.

The mode of dealing with cases of disability is covered by the regulations of the Navy approved by the President to which the statute gives the force of law. § 1547, Rev. Stats. Naval Regulation 361 of 1913 gave authority to the commander-in-chief of a fleet, commandant of a station, or other commanding officer, to order a medical survey of any person in his command. Under Regulation 364 the Board of Survey of an officer was authorized to recommend treatment, or sick leave, but if the disability was deemed permanent, it might recommend that the officer be ordered before a Retiring Board. By Regulation 365 when a person surveyed was within the United States or the waters thereof, or in the Caribbean or adjacent waters, and was found unfit for duty, and the commanding officer approved the finding and recommendation of the Board as to what should be done, this was to be carried out "except in cases involving discharge, travel, leave, or retirement, which shall be referred to the department."

Regulation 331, sub-division 5, once provided:

"When any officer on the active list becomes physically incapacitated to perform the duties of his office, and the probable future duration of such incapacity is permanent or indefinite, he will immediately be ordered before a retiring board, and pending final action upon the question of his retirement will not be examined for promotion".

Counsel for the relator has maintained that the Secretary by reason of this regulation is under a statutory duty to order a retiring Board for an officer physically incapacitated and that he has no discretion in the matter. Its history and the abuse it was intended to stop, as well as § 1448, would make such a construction hard to sustain, but we need not go into this. It suffices to say that,

adopted in 1915, it has since lost its statutory force. By order of the President, dated January 14, 1916, it was stricken from the Navy Regulations and was thereafter embodied in instructions to Naval Retiring Boards. (Sec. 679, Naval Courts and Boards, 1917.) Even if it could have been construed as claimed when it had the effect of law, it could not now be made the basis of a proceeding in mandamus against the Secretary. It governs his subordinates only and may be ignored by him. *United States* v. *Burns,* 12 Wall. 246, 252; *Smith* v. *United States,* 24 Ct. Clms. 209. A board of medical survey is simply an executive instrumentality which the Secretary may use to obtain an expert opinion as to the physical capacity of an officer or man. Its recommendations involving retirement must always come to the Secretary for his approval. In the due course of business in the Navy Department applications for retirement dependent on disability must also come before the Secretary who, acting for and in aid of the President, makes preliminary inquiry into the need of ordering a retiring board. The statute does not require the President to direct the Secretary of the Navy to refer a case to a retiring board. It expressly puts it in the discretion of the President to do so or not to do so. It would be a curious inconsistency in the procedure if the Secretary were compelled by law to order a retiring board to consider an officer's case which the President is given discretion to grant or withhold.

But it is argued that an officer disabled in the line of his duty is by § 1455 entitled as of right to retirement on pay and that the courts should secure him that right. The right is one dependent by statute on the judgment of the President and not on that of the courts. If on the preliminary inquiry of the Secretary, he disapproves the application for a retiring board, the officer may appeal directly to the President for action on his petition. This opportunity was provided by section 5323, Naval Instructions, 1913, and would exist without it.

For these reasons, we think that the demurrer to the answer should have been overruled.

*Judgment reversed and the cause remanded for further proceedings.*