

# THE ATTORNEY GENERAL
## OF TEXAS

**Gerald C. Mann**
~~ATTORNEY GENERAL~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

This opinion overrules in part Opinion No. O-3318

Hon. Coke Stevenson
Governor of Texas
Austin, Texas

Opinion No. 0-4438
Re: The power of the State to pro-
hibit or regulate the sale of 3.2
beer by an Army Post Exchange, lo-
cated within a "dry" area, jurisdic-
tion over such military area not
having been made by the State to the
Federal Government and where the
sale of such beer has been author-
ized by the proper military authori-
ties.

Dear Sir:

We have received and considered your request to us
for an opinion. We quote from your request:

"Major General Richard Donovan, Commander of the
Eighth Corps Area, United States Army, with headquarters
at Fort Sam Houston, has informed me that the military
authorities at Camp Bowie have desired to authorize the
sale of 3.2 beer by the army post exchanges at that sta-
tion. General Donovan recognizes that this contemplated
action involves a legal question. His opinion is that
the army post exchanges at Camp Bowie are government
instrumentalities; that the Legislature of Texas has
previously recognized them as such for the purpose of
affording them exemption from the cigarette tax; that,
while the sale of, or dealing in, intoxicating liquors
at any post exchange or canteen is still prohibited by
Federal statute, Congress, however, has declared that
3.2 beer is non-intoxicating, and the War Department has
accordingly authorized its sale by army post exchanges.

"The questions at issue appear to be clearly stated
in the letter which General Donovan has addressed to me
on this subject. I am attaching hereto a copy of his
letter.

"I am submitting the entire matter to you for your
careful consideration, and respectfully request your ad-
vice and guidance on questions involved."

In addition to the facts given in your request, we de-
sire to quote pertinent parts of the letter from Major General
Richard Donovan addressed to you and enclosed with your request:

"For a long time the military authorities at Camp Bowie have desired to authorize the sale of 3.2 beer by the Army Post Exchanges at that station. They are convinced that the supervised, controlled sale of beer within the camp is directly related to the maintenance of morale and the general welfare of the command. It is also believed that by providing places where the soldiers may lawfully procure and drink 3.2 beer within the camp and under the control of military authorities the temptation to obtain it and intoxicating liquors against the laws of the local community would be materially decreased. More men would remain in camp. The suggested arrangement would therefore be of material assistance and benefit, not only to the military authorities but also to the state, county and city officials charged with the responsibility for the enforcement of the local prohibition laws. After careful consideration of the matter I now desire to authorize the sale of 3.2 beer at the post exchanges at Camp Bowie and, whenever the situation seems to justify it, at other camps, posts or stations located in dry localities in Texas.

"For your information I inclose herewith copy of an opinion by The Judge Advocate General of the Army, which I understand has been approved by the Secretary of War, relative to a similar situation in Louisiana. ***

"***

"In view of the foregoing I think it clear that the views expressed in the inclosed opinion of The Judge Advocate General and followed by the Governor of Louisiana apply, with the result that there should now be no serious question about my authority to authorize the sale of beer at Camp Bowie. I am, however, unwilling to do so at the risk of disturbing the pleasant and entirely satisfactory relations now existing between the military and civil authorities in this state. Neither would I unnecessarily offend the sensibilities of a local community.

"Under these circumstances I am following the procedure which was successfully pursued in the State of Louisiana under a similar situation. I submit to you my views on the subject, supported by the inclosed opinion of The Judge Advocate General of the Army, in the hope that you may be able to advise me that you concur in the position

that the military authorities have the paramount right to control and supervise their post exchanges wherever located, and that if it is deemed necessary or advisable for the morale and general welfare of the troops to authorize the sale of 3.2 beer by such exchanges, they may do so without incurring the risk of criminal prosecution by the state authorities. After procuring your concurrence in the matter I propose to consult the local authorities at Brownwood and then, after assuring myself that there is no appreciable, reasonable opposition by the city and county officials there, I propose, with the approval of the War Department, to authorize the sale of 3.2 beer at Camp Bowie.

"I anticipate no difficulty with reference to the payment of the state tax prior to delivery of the beer at the exchanges. The post exchanges, however, are not required to obtain and pay for state licenses. The beer will be sold under proper con trol and supervision and careful precautions taken to prevent its being taken from the camp.

"The sale of or dealing in intoxicating liquors at any post exchange or canteen is still prohibited by Federal Statute. Congress, however, has declared that 3.2 beer is non-intoxicating and the War Department has accordingly authorized its sale by Army post exchanges."

This department has previously held in Opinion No. O-3318 that where a deed of cession of jurisdiction, in compliance with Articles 5242 to 5247, inclusive, R.C.S. of Texas, 1925, has been made to the Federal Government that the state has no power or jurisdiction to regulate or control the sale of beer in such ceded areas. That part of the holding in that opinion is not involved nor affected here. In the same opinion, however, it was held if a deed of cession of jurisdiction had not been made, in the statutory manner, by the State of Texas to the Federal Government, that the sale of beer by an Army canteen on grounds used for military purposes located in a "dry area" as contemplated in the Texas Liquor Control Act, by the Federal Government, was subject to the Texas laws relating thereto. At the time said opinion was written (April 12, 1941) there was considerable confusion in the court decisions regarding the legal status of Army post exchanges being Federal instrumentalities. This is evidenced by the extended discussion of the authorities on that point in our Opinion No. O-2317, in which this department concluded that Army Post Exchanges were not Federal instrumentalities of Government. It will be noted that at the time said Opinion No. O-2317 (May 7, 1940) was written the latest case of importance in the Federal

courts (United States vs. Query, 121 F.(2d) 631) had not been affirmed by the Fourth Circuit Court of Appeals and, of course, writ of certiorari had not, at that time, been denied in the case. It should be further observed that at the time our Opinion No. O-3318 was written there were no facts before us showing an expressed intention of the commanding officer of the Eighth Corps Area embracing the State of Texas, subject to the approval of the War Department, to authorize the sale of beer by an Army post exchange in a dry area such as we are now considering to the men in the Army under the rules and regulations for the reasons shown in Major General Donovan's letter as quoted above.

On February 13, 1942, this department again carefully reviewed the authorities regarding the legal status of Army post exchanges and in Opinion No. O-4392 we held that Army post exchanges are Federal instrumentalities. We quote from the opinion:

"In reaching our conclusion we are inclined to follow the recent Federal decisions rather than the older cases and the California Supreme Court. We do so for two reasons. In the first place the question discussed herein is essentially a Federal question and the interpretation placed on such a question by the Federal courts and by the Federal administrative agencies should be given more weight than the decisions of a state court. This is especially true because the case of United States vs. Query directly passed on this question and the Supreme Court of the United States denied an application for writ of certiorari in November, 1941 . We adopt this view for the second reason that in our opinion a full analysis of the operation of Army post exchanges leads to the conclusion that they are Federal instrumentalities performing a necessary and vital governmental function under congressional authority. As such they are exempt from the payment of the Texas Chain Store Tax.

"Out Opinion No. O-2317, which was written prior to the decisions in the Query case and the Falls City Brewing Company case, insofar as the same holds post exchanges not to be Federal instrumentalities, is hereby expressly overruled."

Since we have held that Army post exchanges are Federal instrumentalities we next consider the power of the state to regulate and control the sale of beer by Army post exchanges, in a "dry area" within the meaning of the Texas Liquor Control Act, within an area used by the Federal Government for military purposes

but over which it has not acquired a deed of cession of jurisdiction from the State of Texas.

The case of Fort Levenworth Railroad Company vs. Lewis, 114 U. S. 525, 29 L. Ed. 264, by the Supreme Court of the United States held:

> "Where, therefore, lands are acquired in any other way by the United States within the limits of a state than by purchase with her consent, they will hold the land subject to this qualification: that if upon them forts, arsenals, or other public buildings are erected for the uses of the general government, such buildings, with their appurtenances, as instrumentalities for the execution of its powers, will be free from any such interference and jurisdiction of the state as would destroy or impair their effective use for the purposes desired. Such is the law with reference to all instrumentalities created by the general government. Their exemption from state control is essential to the independence and sovereign authority of the United States within the sphere of their delegated powers. But, when not used as such instrumentalities, the Legislative power of the state over the places acquired will be as full and complete as over any other places within their limits."

In the case of Ohio vs. Thomas, 173 U. S. 277, 43 L.Ed. 699, where the Governor of a Soldiers' Home was convicted for disregard of a state law concerning the use of oleomargarine, while furnishing it to the inmates of the home as a part of their rations, the court said:

> " *** In making provision for so feeding the inmates, the Governor, under the direction of the Board of Managers, and with the assent and approval of Congress, is engaged in the internal administration of a Federal institution, and we think a state legislature has no constitutional power to interfere with such management as is provided by Congress.

> "Whatever jurisdiction the state may have over the place or ground where the institution is located, it can have none to interfere with the provision made by Congress for furnishing food to the inmates of the home, nor has it power to prohibit or regulate the furnishing of any article of food which is approved by the officers of the home, by the Board of Managers, and by Congress. Under such circumstances the police power of state has no jurisdiction.

"We mean by this statement to say that Federal officers who are discharging their duties in a state and who are engaged, as this appellee was engaged, in superintending the internal government and management of a Federal institution, under the lawful direction of its Board of Managers and with the approval of Congress are not subject to the jurisdiction of the state in regard to those very matters of administration, which are thus approved by Federal authorities." (Underscoring ours)

It was held in the case of Johnson vs. Maryland, 254 U.S. 51, 65 L.Ed. 128, that the State of Maryland had no authority to arrest an employee of the Post Office Department of the United States while such employee was driving a Government motor truck in the transportation of mails over a post road from a point in Maryland to Washington, D.C., because the driver had not obtained a driver's license as required by state law. The court said:

"It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer, upon examination, that they are competent for a necessary part of them, and pay a fee for permission to go on. Such a requirement does not merely touch the government severance remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders, and requires qualifications in addition to those that the government has pronounced sufficient. It is the duty of the department to employ persons competent for their work, and that duty it must be presumed has been performed."

Article 2, Section 8, of the United States Constitution, provides:

"The Congress shall have power *** to raise and support armies *** to make rules for the government and regulation of the land and naval forces *** and to exercise exclusive legislation in all cases whatsoever *** and to exercise like authority over all places purchased by the consent of the Legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock yards and other needful building; - to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the

Government of the United States or in any depart-
ment or officer thereof."

Pursuant to the foregoing constitutional authority the
Congress has enacted certain Acts relating to the creation, main-
tenance and support of the Army of the United States. The stat-
utes which we think are pertinent to this discussion will be con-
sidered.

The duties of the Chief of Staff of the Army have been
defined by Congress and are contained in 10 U.S.C.A., Section 33.
Said section reads as follows:

"The Chief of Staff shall preside over the War
Department General staff and, under the direction of
the President, or of the Secretary of War, under the
direction of the President, shall cause to be made,
by the War Department General Staff, the necessary
plans for recruiting, organizing, supplying, equipping,
mobilizing, training, and demobilizing the Army of the
United States, and for the use of the military forces
for national defense. He shall transmit to the Secre-
tary of War the plans and recommendations prepared for
that purpose by the War Department General Staff and
advise him in regard thereto; upon the approval of such
plans or recommendation by the Secretary of War, he
shall act as the agent of the Secretary of War in carry-
ing the same into effect."

Section 16 of 10 U.S.C.A. reads as follows:

"The President is authorized to make and publish
regulations for the government of the Army in accord-
ance with existing laws, which shall be in force and
obeyed until altered or revoked by the same authority;
provided, that said regulation shall not be inconsist-
ent with the laws of the United States."

In accordance with the above authority granted by Con-
gress, Army Regulations No. 210-65 were issued on July 1, 1941.
Said Regulations were promulgated by General G. C. Marshall, Chief
of Staff, by order of the Secretary of War and they supersede all
previous letters and instructions pertaining to exchanges. Said
Regulations read in part as follows:

"1. Purposes - a. Exchanges are established for
the following purposes: (1) To supply the persons to
whom sales are authorized (par. 13), at the lowest
possible price, with articles of ordinary use, wear,
and consumption not supplied by the Government.

"(2)  To afford to military personnel facilities for comfort, recreation, and amusement to include, as may be desirable, the financial support and maintenance of recreational atheltics, entertainments, service clubs, libraries, and community cooperation within the limits prescribed in AR 210-50.

"(3)  To provide, when necessary, the means for improving organization messes.  .b. Exchanges should be conducted in such a manner as to be of real assistance and convenience to enlisted men and not as large profit making institutions.

"2.  Establishment - a. Whenever conditions make · it desirable and practicable, the commanding officer of a post, camp, or station will establish and maintain an exchange to include such number of branches, departments, and subordinate activities thereof as may be necessary to serve the military personnel."

It is apparent therefore that Congress has delegated the authority to make rules and regulations for the government and operation of the Army.  It has placed on the Chief of Staff, as agent of the Secretary of War, the duty of supplying the Army of the United States.  Army Post Exchanges have been established pursuant to such authority for the purpose of supplying Army personnel certain commodities not supplied by the Army itself. Likewise, the purpose of a post exchange is shown to be to afford to military personnel the facilities for comfort, recreation and amusement.  We believe, therefore, that the regulations issued concerning Army post exchanges were promulgated under the authority of Congress.  United States vs. Query, 21 Fed. Supp. 784, 121 Fed. (2d) 631; Ex parte Reed, 100 U. S. 13; Denby vs. Berry, 263 U.S. 29; Smith vs. Whitney, 116 &.S. 167; United States vs. Cordy, 58 Fed. (2d) 1013; Falls City Brewing Company vs. Reeves, 40 Fed. Supp. 35, and our Opinion No. 0-4392.

It is a well settled rule of law that rules and regulations authorized and promulgated by the proper authority and within the rule making power delegated to such authority and made in accordance with existing laws have the force and effect of law. United States vs. Freeman, 3 Howard 556, 566, 11 L. Ed. 724; Gratiot vs. United States, 4 Howard 80, 118, 11 L. Ed. 884; Ex parte Reed, supra; Denby vs. Berry, supra; Smith v. Whitney, supra; United States vs. Query, supra; and our Opinion No. 0-4392.

It was said by the court in the Falls City Brewing Company vs. Reeves, supra, case:

"The general welfare and morale of the personnel in a military training camp is a very important part of any military program looking to a well trained and efficient army. The view is now well established that adequate recreational facilities for soldiers in training are as important as adequate drill fields. ***"

Under the holding of the authorities referred to above, we think that it must be said without question that when the War Department finds the necessity for and promulgates rules and regulations for the benefit of the general welfare, morale and safety of the armed forces that state officials do not have the power nor authority to question the action of the military authorities.

Under the doctrine laid down in the cases of Fort Levenworth Railway Company vs. Lewis, Ohio v. Thomas, and Johnson v. Maryland, supra, we think that the State has no power nor jurisdiction to regulate in any manner nor prohibit, under its laws, the sale of 3.2 beer in a dry area, such as Camp Bowie, where the sale of same has been authorized, in such area, by the proper authorities of the War Department in the interest of promoting the general welfare, morale and safety of its armed forces. It seems to us that Congress has delegated to the War Department very broad powers for those purposes to be used by it, in its discretion, whenever its highly trained military experts find it advisable and proper, the only limitation on such discretionary powers being that such "regulations shall not be inconsistent with the laws of the United States." If we should be in error in our conclusion interpreting the holdings in the United States Supreme Court cases, just referred to in this paragraph, we think that under the doctrine announced in Query v. United States, supra (and other authorities therein cited), that when the War Department authorizes, by proper order or regulation, the sale of 3.2 beer by Army post exchanges to persons in the armed forces, where the exchange is located in a "dry" area, as contemplated within the Texas Liquor Control Act, the State through its officers and agents has no power nor jurisdiction to regulate nor prohibit the same. We think such action is authorized under the Federal laws. If such regulation is authorized and within the scope of the delegated authority then it has the equal force, effect and dignity of law. Query v. United States, supra; Ex parte Reed, 100 U. S. 13; Denby vs. Berry, 263 U. S. 29; Smith v. Whitney, 116 U. S. 167; United States v. Cordy, 58 Fed. (2d) 1013, Fall City Brewing Co. v. Reeves, 40 Fed (2d) 35 and our Opinion No. 0-4392.

We are advised by the General's letter to you that the State authorities of Louisiana have agreed with the contention of the military authorities of the Army that the State of Louisiana has no power to regulate nor prohibit, under its laws, the sale of

3.2 beer by Army post exchanges to persons in the Army in similar "dry" areas. The War Department has authorized the sale of beer, under the facts stated, in that State.

It is indicated in your letter to us that the War Department has already authorized the sale of 3.2 beer in Texas in "dry" areas under the conditions and circumstances already discussed. However, from a consideration of the General's letter we conclude that he proposes to recommend to the War Department, and subject to its approval, that the sale of 3.2 beer be authorized at the Army post exchanges at Camp Bowie, under the conditions he has set out in his letter.

You are, therefore, respectfully advised that it is our opinion that when the War Department properly approves the proposal of Major General Donovan and authorizes, by regulation or order, the sale of 3.2 beer at Camp Bowie by the post exchange to persons in the Army that the State of Texas has no jurisdiction nor power to regulate nor prohibit the same under its laws.

Any conclusions expressed in our Opinion No. O-3318 which may be contrary to those expressed herein are hereby expressly overruled.

We trust that in this manner we fully answered your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Harold McCracken
Harold McCracken, Assistant

APPROVED.MAR 21, 1942
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY GENERAL

This opinion considered and approved in limited conference.

HM:ej:wb