**UNITED STATES of America**

v.

**Louis B. LITCHFIELD.**

**Civ. No. 848.**

United States District Court
D. Maine, N. D.
Sept. 27, 1956.

Peter Mills, U. S. Atty., Portland, Me., Francis E. Day, Asst. U. S. Atty., Bangor, Me., for plaintiff.

Herbert T. Silsby, II, Ellsworth, Me., for defendant.

CLIFFORD, District Judge.

This matter comes before this Court upon a motion by the defendant for summary judgment on the ground that he is entitled to judgment in his favor as a matter of law in a suit instituted by the government against him for an alleged over-payment of pay and allowances.

Briefly, the undisputed material facts, as determined from the various affidavits and documents submitted by both parties, are as follows: On November 6, 1946, the Chief of Naval Personnel ap-

proved a proposal for two seminars at the Bureau of Yards and Docks, located in Washington, D. C., each to last for two weeks. Accordingly, the Commandants of the various naval districts were directed by the Chief of Naval Personnel to order inactive reserve personnel to "training duty * * * not to exceed fourteen (14) days". Later, however, the designation as to the type of duty was changed by the Chief of Naval Personnel. On February 11, 1947, in a letter to the Commandants, he directed that the reservists should be ordered to " 'active duty' (not training duty)" for the purpose of attending the seminars.

The purpose of this amendment appears in a letter dated September 30, 1947, from the Chief of Naval Personnel to the Judge Advocate General, which reads, in part, as follows:

"3. Ref. (d) was promulgated to the service indicating that it was desired to order certain inactive officers of the U. S. Naval Reserve to active training duty for the purpose of attending a semi-annual seminar in the Bureau of Yards and Docks. This period of duty was not intended to be in excess of thirty (30) days.

"4. In order that these officers might receive a per diem while attending the seminar in Washington, D. C., instructions were given to order these officers to 'active duty', and then, by separate order, to order them on temporary additional duty orders to Washington, D. C. and return, in a per diem status. Upon their return to the district headquarters where they reported for active duty, they were to be released from active duty."

Pursuant to the aforementioned orders, the Commandant of the First Naval District directed that the defendant report to him for "active duty with pay and allowances" on March 8, 1947. Upon completion of his active duty, the defendant was to report to the Medical Officer Naval Receiving Station, Boston, Massachusetts, and, thereafter, "when directed by the Commandant", he was to proceed to his home and, upon arrival, to consider himself released to inactive duty.

Endorsement I on his orders, dated February 25, 1947, indicates that he was examined on that date and found physically qualified for active duty. While it is not indicated on his orders when he reported to the Commandant of the First Naval District, a further endorsement indicates that he arrived in Boston, Massachusetts, on March 7, 1947. In the meantime, on February 28, 1947, orders addressed to the defendant had been issued by said Commandant, directing him to proceed to Washington, D. C., and report to the Chief of the Bureau of Yards and Docks for temporary additional duty for the purpose of attending the first semi-annual seminar.

The defendant proceeded to Washington and reported for this duty. On March 20, 1947, while on such duty, he reported to the Naval Hospital, National Naval Medical Center, Bethesda, Maryland, for treatment. He was discharged from treatment on May 7, 1947, and on May 8, he reported to the Commandant of the First Naval District, who directed him to report immediately to the Post Remobilization Separation Activity, Receiving Station, Boston, for temporary duty in connection with his separation processing. On May 12, 1947, he was examined and found physically qualified for release from active duty. He was detached on that date, directed to proceed to his home, and granted 9 days' leave upon the expiration of which he was to consider himself released from all active duty.

On May 15, 1947, prior to the expiration of the leave granted him incident to his release from active duty, the defendant was admitted to the Naval Hospital, Chelsea, Massachusetts, and on that date the Medical Officer in Command at

that hospital modified his orders for release from active duty so as to continue him on active duty until discharged from treatment.

While in the hospital he continued to receive his pay and allowances as he had since his original entry on active duty. But for some unexplained reason no pay and allowances were authorized by the Navy Department after December 31, 1947, even though he was still confined at the hospital.

On April 13, 1948, the Assistant Comptroller General of the United States, by Decision No. B–74143, advised the Secretary of Navy that the defendant was not entitled to the pay and allowances he received subsequent to March 26, 1947, the date on which it was intended he be relieved from active duty. Because of this decision, the Medical Officer in Command at the Chelsea Hospital discharged the defendant from treatment and hospitalization on May 21, 1948.

The government has initiated this action, seeking to recover the $2,602.07 that was paid to the defendant from March 27, 1947, to December 31, 1947, asserting that his active duty was not intended to be in excess of thirty days and therefore he was not entitled to any pay and allowances subsequent to March 26, 1947.

At the outset it is important to recognize that various types of duty are provided by the Navy for members of the Naval Reserve. See Title 34 U.S.C.A. generally, but especially Sections 853c–1 and 853e–1; 32 C.F.R., Subpart D—Training, Section 713.501 et seq. Because the consequences of active duty differ vastly from active or inactive training duty, the terms designating the type of duty are employed with precision, as words of art, in the statutes, regulations and military orders. And the Chief of Naval Personnel, as might be expected, manifested complete familiarity with these terms in ordering the defendant to " 'active duty' (not training) duty".

The crux of this case is that the Chief of Naval Personnel had the authority to order the defendant to active duty in time of peace for an unspecified period of time. 34 U.S.C.A. § 853c–1; 32 C.F.R. Section 713.353(a). Indeed the government does not controvert this conclusion by contending that the Chief of Naval Personnel in issuing the order had violated Naval regulations, thereby allegedly making it void ab initio. Rather, it merely asserts that the defendant is not entitled to pay and allowances subsequent to March 26, 1947, the date on which it was allegedly intended to relieve him from active duty. Whatever the defendant received in pay under the order prior to March 26, 1947, the government is content that he may retain.

In nowise in violation of Naval regulations, the order remained effective and enforceable until it was revoked, which, during the period covered by this action, never occurred. Jones v. United States, 102 Ct.Cl. 188; Chandler v. United States, 70 Ct.Cl. 690. No one to whom this order was presented would have had any recourse other than to accept it as full authority for whatever the designated type of duty entailed. Appreciation of the fact that this order had this effect undoubtedly prompted the Assistant Comptroller General to criticize the manner in which it had been prepared, remarking in his report to the Secretary of Navy that such an order "places an unwarranted burden on the disbursing officers of the Navy to whom claims based thereon may be presented for payment" and "tends to confuse, unnecessarily, the individual's rights and duties." Likewise, on the basis of this order, the Medical Officer in Command at the Naval Hospital, Chelsea, Massachusetts, was fully justified in continuing the defendant on active duty until discharged from treatment. Military personnel in active duty continue under that status even while hospitalized. Schellhammer v. United States, 115 Ct.Cl. 409; see also Terry v. United States, 97 F. Supp. 804, 120 Ct.Cl. 315.

■ Military orders, necessarily, command the highest respect and obedience. In issuing such orders much is left to the discretion of the superior officer, provided he remains within the scope of his authority. Hence, where an order, such as the one in question, is patently valid, it is the opinion of this Court that it does not have the power to review the motives and unexpressed intentions of the superior officer regarding that order. Nordmann v. Woodring, D. C., 28 F.Supp. 573; Harper v. Jones, 9 Cir., 195 F.2d 705; Isbrandtsen-Moller Co. v. United States, 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562; Duke Power Co. v. Greenwood County, 4 Cir., 91 F.2d 665, affirmed 302 U.S. 485, 58 S.Ct. 306, 82 L.Ed. 381; Glenn v. United States, 37 Ct.Cl. 254; Denby v. Berry, 263 U.S. 29, 44 S.Ct. 74, 68 L.Ed. 148. Whatever may have been his motives and intentions in directing the defendant to active duty, as distinguished from active training duty, are, therefore, immaterial to this action.

■ But the result of this decision would not be altered even if this Court were able to consider the motives and intentions of the Chief of Naval Personnel, regarding this order. Once the Navy became aware that the defendant would likely continue in active duty beyond thirty days, because of an apparently serious illness, it was the obligation of either the Commandant of the First Naval District or Chief of Naval Personnel to revoke the original order. It is only in this manner that whatever intention existed in regard to the defendant could be effectively expressed. Jones v. United States, supra; Chandler v. United States, supra. Since, for reasons upon which this Court may not speculate, the original order remained unrevoked, the defendant was entitled to the pay and allowances he received at least until December 31, 1947, when payments to him ceased.

It is therefore ordered, adjudged and decreed that the defendant's motion for summary judgment be and hereby is granted, and the case is dismissed.