**James Mark WOODWARD, Plaintiff,**

v.

**Commander J. A. MOORE et al., Defendants.**

Civ. A. No. 76–1199.

United States District Court, District of Columbia.

May 31, 1978.

David Gespass, Gespass & Johnson, Washington, D.C., for plaintiff.

Patricia J. Kenney, Special Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

BARRINGTON D. PARKER, District Judge.

James M. Woodward, a former United States Naval Air Reservist, brings this action against several defendants including his former immediate commanding officer, the Secretary of the Navy and other Navy officials, seeking reinstatement to active duty in the United States Navy, back pay and other relief.

Cross motions for summary judgment have been filed by the parties. After a consideration of the administrative record, memoranda of points and authorities, and argument of counsel, the Court determines that the defendants are entitled to summary judgment and the complaint should be dismissed.

### I.

The uncontroverted material facts may be briefly stated. Plaintiff Woodward was commissioned as an Ensign in the United States Naval Reserve in October, 1972. He was assigned to active duty status, received additional training as a naval flight officer, and served in that capacity through the summer of 1974. In September, 1974, after Woodward was seen in an officers' club associating with an enlisted man who was being separated from duty for homosexual activities, he admitted to his commanding officer that he had homosexual tendencies. Because of these matters plaintiff was requested to resign. He refused to do so, explaining that he wanted to finish his term of obligated service. His commanding officer, Commander Moore, then advised him that he would be administratively separated. On September 27, 1974, a recommendation was submitted to the Chief of Naval Personnel that plaintiff be administratively processed for discharge under favorable conditions.

That recommendation was not accepted and on October 4, 1974, the Chief of Naval Personnel ordered plaintiff to report for separation processing. Thereafter, on October 22, he was released from active duty and assigned to a reserve position in California, where he served until February, 1975. Later, at plaintiff's request, he was released from further active reserve duty. He applied for relief before the Board of Correction of Naval Records, claiming error in the action by the Chief of Naval Personnel. The application was denied. Woodward remains an Ensign in the Naval Air Reserve and he has not been discharged from the Navy.

### II.

It is a well-established proposition that officers in the armed forces of the United States have no constitutional right to be promoted or retained and their services may be terminated at any time with or

without reason. *Pauls v. Secretary of Air Force,* 457 F.2d 294, 297 (1st Cir. 1972). As a reserve officer, the plaintiff's change in status was a matter committed to the sole discretion of the Secretary of the Navy or the President of the United States. As the Supreme Court noted in commenting on the 1916 statute that created the Naval Reserve Force:[1]

> [I]t is quite evident . . . that members of this force occupied two statuses, one that of inactive duty, and the other of active service. It is further clear that it was within the power of the President, and of the Secretary of the Navy acting for him, to change the members of the Reserve Force from one status to the other. . . . Orders releasing individuals from active service and putting them on inactive duty were clearly within the power of the President and of the Secretary of the Navy acting for him in the administration of the act.

*Denby v. Berry,* 263 U.S. 29, 33, 44 S.Ct. 74, 75, 68 L.Ed. 148 (1923).

■ Title 10 U.S.C. § 681, the current statute relative to the service and assignment of reservists, provides in part:

> (a) Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty.

This statute has been recognized as clear authority for the release of a reservist from active duty with the determination of the conditions and circumstances governing such release remaining within the sound discretion of the Secretary of the Navy. *Abruzzo v. United States,* 513 F.2d 608 (Ct. Cl.1975); *Denton v. United States,* 204 Ct.Cl. 188 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed.2d 449 (1975); *Mercereau v. United States,* 155 Ct.Cl. 157 (1961). The use of Woodward's admission of homosexual tendencies and his association with homosexuals as a basis for the exercise of that discretion did not result in invidious discrimination in violation of due process, nor in a violation of his right to freedom of association. *Berg v. Claytor,* 436 F.Supp. 76 (D.D.C.1977), *appeal docketed,* No. 77–1785 (D.C.Cir. Aug. 29, 1977). Woodward's claims that his status was changed for unlawful reasons must therefore be rejected.

■ Woodward also claims procedural flaws in his release from active status. He claims that his discharge was precluded by the "national emergency" exception of § 681(b), which provides:

> (b) In time of war or of national emergency declared by Congress or the President after January 1, 1953, a member of a reserve component may be released from active duty (other than for training) only if—
>
> > (1) a board of officers convened at his request by an authority designated by the Secretary concerned recommends the release and the recommendation is approved;
> >
> > (2) the member does not request that a board be convened; or
> >
> > (3) his release is otherwise authorized by law.

While such procedural guarantees do limit the exercise of the Secretary's discretion, *see Roberts v. Vance,* 119 U.S.App.D.C. 367, 343 F.2d 236 (1964), it does not appear that § 681(b) applies to the present situation.

Two national emergencies were in effect at the time of Woodward's assignment to inactive status and would appear to call § 681(b) into play.[2] The first declaration related to a work stoppage by United States Postal Service employees in early 1970,[3] and the other concerned an unfavorable balance of payments position of the United States in 1971 which threatened the country's trade and international competi-

---

1. Naval Appropriation Act of Aug. 29, 1916, ch. 417, 39 Stat. 556, 587.

2. Section 681(b) refers only to national emergencies occurring after January 1, 1953. National emergencies declared prior to that date do not provide a basis for the procedural rights contained in the statutory provision.

3. Proclamation 3972, March 23, 1970.

tive position.[4] The first of these, dealing with the postal strike, is the only one of the two relevant to Woodward's situation, since it alone involved the call-up of reserve forces due to the declared emergency.[5] That strike, however, was short-lived and its effects long over by the time of Woodward's reassignment; there was no requirement that his request for a board of officers under § 681(b) be granted.[6]

■ Woodward also contends that the procedures set out in Article 3830160(6), Bureau of Naval Personnel Manual, governed his release from active duty and were not followed. Specifically, he argues that a recommendation for release and submission of a special fitness report from his commanding officer were required. He also contends that he was denied a hearing.

His reliance on Article 3830160(6) is misplaced. The Article provides safeguards for officers who are being permanently separated from service and whose appointment is being revoked. No punitive action is reflected in the plaintiff's personnel folder nor does his release from active duty status stigmatize him in any way or reflect that his service was other than honorable. *See Sims v. Fox*, 505 F.2d 857 (5th Cir. 1974), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975); *Knehans v. Callaway*, 403 F.Supp. 290 (D.D.C.1975); *see also Kennedy v. Secretary of Navy*, 131 U.S.App. D.C. 39, 401 F.2d 990 (1968). While Commander Moore did originally recommend an administrative discharge, the Secretary of the Navy elected only to release the plaintiff from active duty as a reservist. The Secretary's action was permissible and pursuant to statutory authority, 10 U.S.C. § 681(a), and regulations, 32 C.F.R. § 714.-6(c)(3). Woodward's commission has not

been revoked, his appointment as a reserve officer has not been terminated and he retains his status as an Ensign in the United States Naval Reserve; his obligation to render service has not been terminated.[7]

On basis of the foregoing it is this 31st day of May, 1978,

ORDERED that the plaintiff's motion for summary judgment is denied; and it is

FURTHER ORDERED that the defendant's motion for summary judgment is granted and the complaint of James Mark Woodward is dismissed.

---

4. Proclamation 4074, August 15, 1971.

5. The legislative history of § 681(b) indicates that it was enacted to provide a right of review to a reservist who was being involuntarily released when other reservists were being involuntarily called to active duty. 1952 U.S.Code Cong. & Admin.News at 2036. In limited national emergencies, such as the two applicable here, § 681(b) would be logically applicable

only if reserves were called to meet the emergency.

6. There are other exceptions to the Secretary's discretion under § 681, none of which are applicable to Woodward. *See, e.g.,* 10 U.S.C. §§ 679 and 680 (Active Duty Agreements); 10 U.S.C. § 1163(d) (Limitations on Separation).

7. *See* 32 C.F.R. § 714.3(j), (m).