James **COPPEDGE**, Plaintiff,

v.

John O. **MARSH**, Secretary of the Army, et al., Defendants.

Civ. A. No. 81–2149.

United States District Court, D. Kansas.

Jan. 6, 1982.

**424**

Patrick J. Reardon, Leavenworth, Kan., for plaintiff.

Jim J. Marquez, U. S. Atty., Janice Miller Karlin, Asst. U. S. Atty., Kansas City, Kan., for defendants; Douglas G. Andrews, Major, JAGC, U. S. Army, and M. Scott Magers, Lt. Col., JAGC, Chief, Military Personnel Branch, Litigation Division, Washington, D. C., of counsel.

1. Dismissal is a separation from service under conditions of dishonor that can only be adjudged against commissioned officers. 10 U.S.C. § 1161.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on plaintiff's motion for a preliminary injunction. Plaintiff seeks to restrain the defendants from separating him from active duty in the United States Army Reserve until completion of appellate review of plaintiff's court-martial conviction. A hearing was held on plaintiff's motion on July 23, 1981, at which plaintiff was the only witness. Defendants have since filed a motion to dismiss or in the alternative for summary judgment. Both sides have filed proposed findings of fact and conclusions of law in addition to extensive memoranda on both the motion for injunctive relief and the motion to dismiss, and this case is now ready for ruling.

1. *Findings of Fact.*

Plaintiff is a reserve commissioned officer and chaplain who served on extended active duty in the United States Army with a rank of Captain until August 1980, when he was tried by a General Court-martial. He was convicted of conduct prejudicial to good order and discipline, of service discrediting, and of conduct unbecoming an officer. He was sentenced to confinement at the United States Disciplinary Barracks, Fort Leavenworth, Kansas, forfeiture of pay, and dismissal from the Army.[1] At the time of his court-martial, plaintiff was on "voluntary indefinite" status.[2]

As plaintiff's period of confinement was drawing to a close, Fort Leavenworth authorities requested permission from the Department of the Army to release plaintiff from active duty, effective on the date of his release from confinement, as required by Army Regulation 635–100, ¶ 3–73b. Approval for plaintiff's release from active duty was sent by return message from the Department of the Army. Orders were

2. After a reserve officer has completed his or her initial obligated service on active duty, the officer may request an extension of active duty either for a definite period or an indefinite period, as in plaintiff's case. Army Reg. 135–215.

subsequently published at Fort Leavenworth, which released plaintiff from active duty and transferred him to the United States Army Reserve Group (standby), RCPAC, St. Louis, Missouri. Plaintiff was not required to personally report to this unit, but was ordered to keep a current mailing address on file with his new unit. Plaintiff was released from the Disciplinary Barracks at Fort Leavenworth, Kansas, on April 24, 1981, the date that his release from active duty was to take effect. Currently, plaintiff is not receiving any pay from the United States Army nor is he enjoying any of the other privileges that would inure to a reserve officer on active duty.

Plaintiff filed this action on June 9, 1981, asking the court to restrain the Army from releasing him from active duty until all appeals of his court-martial conviction are exhausted. His conviction is now pending appellate review by the Court of Military Review under 10 U.S.C. § 866. His court-martial conviction was reviewed by the Convening Authority, pursuant to 10 U.S.C. § 864, who approved the findings and sentence previously imposed. Plaintiff filed no application for relief with the Army Board for Correction of Military Records, which could consider such a request pursuant to 10 U.S.C. § 1552 and Army Regulation 15–185 [32 C.F.R. § 581.3 (1978)].

### 2. Defendants' Motion to Dismiss.

Defendants raise four issues in opposition to the motion for injunctive relief and in support of their motion to dismiss or for summary judgment. First, defendants allege that this court lacks subject matter jurisdiction in this action. Second, defendants assert that the plaintiff's claim is neither justiciable nor reviewable. Defendants further contend that the complaint fails to state a claim upon which relief can be granted, and finally, that plaintiff should be barred for failure to exhaust an available administrative remedy. Plaintiff, on the other hand, argues that this matter is justiciable and within the subject matter jurisdiction of this court, that his complaint does state a cause of action, and that the evidence establishes the prerequisites for the issuance of a preliminary injunction. Plaintiff's basic contentions are that due process was not afforded him in the "attempted" release from active duty, and that the Army Regulations providing that reserve officers may be released from active duty pending appellate review of court-martial convictions denies reservists the equal protection of the law. In addition, plaintiff denies that the orders releasing him from active duty in April of 1981 were valid.

### A. Jurisdiction.

Federal jurisdiction in this case could be based either on 28 U.S.C. § 1331 or § 1361. Section 1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Section 1361 provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Plaintiff has alleged a violation of his Fifth Amendment right to due process and has also alleged that he has been deprived of equal protection of the law. The Supreme Court has discussed the proper role of a dismissal of suit for lack of jurisdiction in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945):

[W]here the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit.... The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy.

*Id.* at 681–82, 66 S.Ct. at 776.

The Court went on to note that it was well settled that failure to state a cause of action called for a judgment on the merits and not for a dismissal for lack of jurisdiction.

> The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

*Id.* at 682–83, 66 S.Ct. at 776.

The Court concluded that because the right of the petitioners to recover under their complaint would be sustained if the Constitution and federal laws were given one construction over another construction urged by their adversaries, the district court had jurisdiction.

The exceptions noted by the Court in *Bell* allow a federal court to dismiss a claim for lack of jurisdiction where there is no "substantial" federal question presented. This is so even though a claim alleges a violation of federally guaranteed rights that would appear to grant jurisdiction under § 1331. In *Hagans v. Lavine*, 415 U.S. 528, 539–41, 94 S.Ct. 1372, 1380–1381, 39 L.Ed.2d 577 (1974), the Supreme Court held that the substantial federal question doctrine will warrant dismissal only when the claim is (1) wholly insubstantial or obviously frivolous, (2) foreclosed by prior cases which have settled the issue, or (3) so patently without merit as to require no meaningful consideration.

■ We cannot agree with defendants that plaintiff has failed to assert a substantial federal question, or that the doctrine of sovereign immunity prohibits the exercise of jurisdiction in this case. In *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), the Fifth Circuit faced a claim similar to plaintiff's. An Air Force captain claimed that an erroneous report in his personnel file resulted in his being separated from active duty and placed in a reserve status. His action, seeking declaratory and injunctive relief against the appropriate officials of

the Air Force, was based upon a violation of his due process rights in the Fifth Amendment. After citing *Bell*, the court quoted a particularly appropriate analysis by Professor Wright:

> [F]ederal jurisdiction exists if the complaint states a case arising under federal law, even though on the merits the party may have no federal right. If his claim is bad then judgment is to be given against him on the merits, and even if the court is persuaded that federal law does not give the right the party claims, it is to dismiss for failure to state a claim on which relief can be granted rather than for want of jurisdiction. Dismissal for want of jurisdiction is appropriate only if the federal claim is frivolous or a mere matter of form. (Footnotes omitted.) C. Wright, Law of Federal Courts 62 (2d ed. 1970).

(As quoted in *Mindes, supra,* at 198.) We find that plaintiff's federal claims are not frivolous nor are they a mere matter of form; therefore, we find that we have jurisdiction to decide plaintiff's constitutional claims.

**B.** *Justiciability.*

■ The defendants further contend that this court should decline review of plaintiff's claims on the grounds that they are nonjusticiable. In *Mindes* the Fifth Circuit surveyed the federal cases dealing with judicial review of military matters:

> ... [W]e have distilled the primary conclusion that a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures. The second conclusion, and the more difficult to articulate, is that not all such allegations are reviewable.

*Id.* at 201.

In determining if a particular allegation is reviewable the court listed four factors that must be weighed:

1. The nature and strength of the plaintiff's challenge to the military action;

2. Potential injury to the plaintiff if review is refused;

3. The type and degree of anticipated interference with military functions; and

4. The extent to which the exercise of military expertise or discretion is involved.

*Id.* at 201–202.

In the instant case, plaintiff has alleged a deprivation of a constitutional right.[3] This claim is a serious one, involving plaintiff's continuation on active duty. The potential injury to plaintiff if review is refused clearly outweighs any interference with military functions at this point. The deference due the military in decisions relating to the placement of officers in non-duty status does not prohibit us from reviewing the constitutional and statutory authorization for such decisions. Using these criteria set forth in *Mindes,* we conclude that the controversy is justiciable.

C. *Failure to State a Claim Upon Which Relief May be Granted.*

As we have determined that we do have subject matter jurisdiction and that the plaintiff's claims are justiciable, we must now turn to the question of whether his allegations state claims upon which relief may be granted.

Plaintiff first contends that his release from active duty would deprive him of property without due process of law. The "property" taken, plaintiff argues, consists of his military pay and benefits, and his active duty status.

Plaintiff's release from active duty was pursuant to ¶ 3–71b, § XIX, Army Reg. 635–100. This provides:

An officer holding a current appointment in the Army National Guard of the United States or the United States Army Reserve which will not expire upon release from active duty who is sentenced to dismissal (commissioned officer) or dishonorable discharge (warrant officer) and

confinement which has been served prior to completion of appellate review will be released from active duty upon completion of confinement.

This regulation is based on the statutory authority contained in 10 U.S.C. § 681(a) which provides:

Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty.

It is well established law that reserve officers in the Armed Forces of the United States have no constitutional right to be promoted or retained and their services may be terminated at any time for any reason, or for no reason at all. *Pauls v. Secretary of Air Force,* 457 F.2d 294, 297 (1st Cir. 1972); *Woodward v. Moore,* 451 F.Supp. 346, 347 (D.D.C.1978). A change in status of a reserve officer is a matter committed solely to the discretion of the Secretary of the officer's branch of service or the President of the United States. *Woodward, supra,* at 348. In *Denby v. Berry,* 263 U.S. 29, 33, 44 S.Ct. 74, 75, 68 L.Ed. 148 (1923), the Supreme Court commented on the statute creating a Naval Reserve Force:

It is quite evident from the foregoing that members of this force occupy two statuses, one that of inactive duty, and the other of active service. It is further clear that it was within the power of the President, and of the Secretary of the Navy acting for him, to change the members of the Reserve Force from one status to the other. The power to call them from inactive duty to actual service was express. The power to order them from actual service to inactive duty was necessarily implied. How this should be done, was within the discretion of the President and his alter ego in the Navy Department, the Secretary.

Title 10 U.S.C. § 681 expresses the congressional view that reserve officers may be terminated in the sole discretion of the Secretary. This provision clearly authorizes

---

**3.** Defendants' contention that plaintiff failed to exhaust intraservice remedies will be dealt with in our discussion of plaintiff's failure to state a claim upon which relief can be granted, *infra.* We do not consider this point determinative of the justiciability issue.

the Secretary to determine what conditions and circumstances shall govern such a release. *Abruzzo v. United States*, 513 F.2d 608 (Ct.Cl.1975); *Denton v. United States*, 204 Ct.Cl. 188 (1974), *cert. den.* 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed.2d 449 (1975).

Plaintiff claims he has a property right to benefits inherent in his continued employment by the Army, but he has shown this court nothing but his own expectancy as creating that right. Plaintiff has no contract terms guaranteeing him (or justifying his expectation of) continued employment. The Army Regulations and the statute do not create such a right, nor could they possibly lead a reasonable person to believe he had such a right. By its express terms, the statute denies the existence of a right to continued employment for reserve officers.

The Supreme Court has considered the property interest claim in continued employment in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). These cases have established that property rights in continued employment may be derived from statutes, from explicit contracts, or from state-declared policies. They must, however, have some identifiable source; they cannot emanate from "mere subjective expectancy." *Perry, supra,* at 603, 92 S.Ct. at 2700. Plaintiff can have no property right in continued military employment with no source for it other than his own "expectancy." In a case involving a reserve officer's claim to a right of continued employment, the Fifth Circuit stated:

> The statute specifically negates the right of a reserve officer to continued employment; reserve officers may be discharged "at the pleasure of the President," 10 U.S.C. § 1162. Thus, the statute explicitly provides that one has no vested right to continue in the employment of the United States Armed Forces. One who

may be discharged "at the pleasure" of another; *i.e.* arbitrarily, for no cause whatsoever, simply has no property right to continued employment. The statute could not have expressed that proviso in any more specific terms.

*Sims v. Fox*, 505 F.2d 857, 861 (5th Cir. 1974), *cert. den.* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975).

Plaintiff further contends that his release from active duty would violate Article 71 of the Uniform Code of Military Justice, 10 U.S.C. § 871(b):

> No sentence extending to the dismissal of a commissioned officer ... may be executed until approved by the Secretary concerned, or such Under Secretary or Assistant Secretary as may be designated by him. . . .

This provision applies to cases pending appellate review before the Court of Military Review and the Court of Military Appeals and prohibits the premature execution of a dismissal by the Secretary. A simple answer to plaintiff's contention is that Article 71 does not address the question of retention on *active duty* pending appellate review. The release from active duty and placement on inactive duty status is clearly not the execution of a dismissal from the service.[4]

Plaintiff relies on this court's prior rulings in *Fitts v. Alexander*, No. 77–2089 (D.Kan., *unpublished*, 1/26/78); *Hines v. Alexander*, No. 77–2121 (D.Kan., *unpublished*, 1/26/78); and *Huff v. Alexander*, No. 77–2186 (D.Kan., *unpublished*, 1/26/78). These three cases also involved reserve officers who were challenging the Army's authority to relieve them from active duty pending final appellate review of court-martial convictions. In these cases, the court entered preliminary injunctions in favor of plaintiffs and denied government's motions to dismiss or for summary judgment. *Fitts, et al.,* were decided solely on

---

4. The sentence of dismissal and accompanying characterization of service is executed only after the procedural safeguards contained in Article 71. The Army Regulations expressly provide that a Certificate of Release or Discharge from active duty (DD Form 214) will not be prepared in final form and indeed plaintiff's own orders of 24 April 1981 provided that these regulations would be observed. Army Regulation 635–100, ¶ 3–73(f).

due process grounds. Based upon our holding herein that a reserve officer has no property right in continued military service, we are convinced that *Fitts, Hines,* and *Huff* were decided erroneously. We no longer adhere to the reasoning employed in those cases and expressly overrule them to the extent they conflict with our opinion in this case.

■ We therefore conclude that plaintiff has failed to state a claim as to a violation of his due process rights under the Fifth Amendment.

■ We now turn to plaintiff's claim that the distinction the Secretary of the Army has drawn between regular Army officers and reserve officers operates to deny plaintiff equal protection of the law. Plaintiff's claim challenges the constitutionality of the regulation, AR–635–100 ¶ 3–71b, itself, since no contention is made that the Secretary did not follow his own regulations. To prevail on equal protection grounds plaintiff must show there is no rational basis for the regulatory provision of which he complains. *Beller v. Middendorf,* 632 F.2d 788 (9th Cir. 1980), *cert. den., sub nom. Beller v. Lehman,* 452 U.S. 405, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). The claim involves neither a fundamental right nor a suspect category and therefore no heightened scrutiny is required. Plaintiff clearly has the burden to show an absence of a rational basis. *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976).

Under Article 1, § 8 of the Constitution, Congress has broad authority in military matters. Pursuant to this grant, Congress has organized the Department of the Army separate from other branches of the military, and has established three components of the Army: the Regular Army, the Army National Guard of the United States, and the Army Reserve. 10 U.S.C. § 3062(c). The Secretary of the Army is "responsible for and has the authority necessary to conduct all affairs of the Department of the Army, including—(1) functions necessary or appropriate for the training, operations, administration . . . and effectiveness of the Army . . ." 10 U.S.C. § 3012(b). Congress has traditionally maintained the distinction between regular or the tenured component of the Army and the reserve, and this distinction has been observed by the courts. In 1902, the Supreme Court overturned a court-martial conviction of a non-regular officer because of the presence of regular officers on the court. *McClaughry v. Deming,* 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902). The Army Reserve is itself divided into the Ready Reserve, the Standby Reserve, and the Retired Reserve. 10 U.S.C. § 267(a). Congress has stated that the purpose of each reserve component is to provide trained units and qualified persons available for active duty in the Army in a time of war or national emergency and at other times as required, to fill the needs of the Armed Forces whenever the regular components are insufficient. 10 U.S.C. § 262.

The defendants argue that there is a rational basis, even a necessity, for removing from active duty court-martialed officers sentenced to dismissal, pending final appellate review. The usefulness of such officers is minimal, and their presence among other officers is a detriment to the service. Article 71 of the Uniform Code of Military Justice, however, prohibits the sentence of dismissal to be executed while appellate review is still pending, as noted above. A regular Army officer has only one military status—active duty. Any effort to relieve a regular officer from active duty would be in direct conflict with Article 71, as "inactive duty" for a regular Army officer would be the equivalent to a "dismissal." A reserve officer, however, by definition has two duty statuses—active and inactive, and an assignment to inactive status pending appellate review is not a "dismissal" prohibited by Article 71. The defendants have put forward a rational basis for the disparate treatment that plaintiff has failed to rebut. Plaintiff's argument that regular and reserve officers must be afforded *identical* treatment would negate the entire statutory scheme Congress has devised for

these two components of the military.[5] The Secretary has made a determination pursuant to his statutory authority that retaining a court-martialed reserve officer sentenced to dismissal on active duty pending appellate review will be detrimental to the morale and efficiency of the Army. Plaintiff has utterly failed to carry his burden of proof that the challenged regulation lacks a rational basis, and we are convinced that it is in fact a rational distinction and fully supported by congressional mandate. The equal protection claim must therefore also fail.

Because plaintiff has failed to state a claim under either the due process or the equal protection theories, defendants' motion to dismiss must be granted. Although we have not reached defendants' claim that plaintiff should be barred because of his failure to exhaust administrative remedies, we note that as an alternative basis for our granting defendants' motion to dismiss, plaintiff failed to avail himself of the procedures established by the Army Board of Corrections of Military Records [ABCMR], and should therefore be barred from pursuing his claim in this court. The ABCMR, established pursuant to 10 U.S.C. § 1552, may consider all applications to determine if any military record should be corrected to prevent error *or* injustice. The law in the Tenth Circuit is clear that a "person who seeks to have a military record reviewed and corrected must first exhaust his administrative remedies." *Thornton v. Coffey*, 618 F.2d 686, 692 (10th Cir. 1980).

### 3. *Plaintiff's Motion for Injunctive Relief.*

■ Since we have concluded that defendants' motion to dismiss must be granted, plaintiff's motion for a preliminary injunction cannot survive. To clear the record, however, we address briefly plaintiff's final contention that the orders received by him April 24, 1981, were legally insufficient to release him from active duty, since the

authority from the Commander of the Military Personnel Center (Milpercen) was not set forth. In this way, plaintiff seeks to distinguish his case from the facts in *Hannan v. Alexander*, No. 81–2094 (D.Kan., unpublished, 5/14/81). In that case Judge Saffels of this district denied plaintiff Hannan's motion for a preliminary injunction in a virtually identical case. Hannan was a reserve officer who was released from active duty pending completion of appellate review. He had also challenged his release on due process and equal protection grounds. Injunctive relief was denied because Hannan could not show irreparable harm; he had already been effectively released from active duty. We do not accept plaintiff's efforts to characterize his orders of April 24, 1981, as merely an "attempt" to release him from active duty. Defendants have filed with the court the required Department of the Army Military Personnel Center authorization. Plaintiff was ordered released from active duty and ordered to a new reserve unit in a non-duty status. His standing is therefore indistinguishable from that of plaintiff Hannan.

Counsel for defendants will prepare, circulate among counsel, and submit to the court for approval, a journal entry of judgment reflecting the court's ruling.

The foregoing will constitute the findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

IT IS SO ORDERED.

---

5. For example, Congress has provided that Regular Army officers can only be relieved for "cause" and only upon recommendation of a Board of Officers. 10 U.S.C. § 3781. In contrast, Congress has specifically authorized the Secretary to release reserve officers at will. 10 U.S.C. § 681.