**Luis PEREZ, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 93 C 2151.

United States District Court,
N.D. Illinois,
Eastern Division.

April 14, 1994.

Carol J. Lazzaro, Lazzaro & Lazzaro, P.C., Waukegan, IL, for plaintiff.

Deborah A. Hill, U.S. Attys. Office, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Luis Armando Perez ("Perez" or "PN2 Perez") has brought suit against the United States. Perez seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, finding that his administrative discharge from the U.S. Navy is void and that he has never been legally separated from the armed services. He also seeks an order compelling the Secretary of the Navy to formally vacate his administrative discharge and restore plaintiff to his pre-discharge status as a Petty Officer, Second Class in the United States Navy. This matter is before the court on defendant's motion for dismissal or in the alternative summary judgment, and plaintiff's "cross-motion"[1] for summary judgment. The court denies defendant's motion for dismissal, while granting the motion for summary judgment in part and denying it in part. Plaintiff's "cross-motion" for summary judgment is denied pending the filing of a proper motion and supplemental briefing on the precise nature of the relief sought.

### BACKGROUND

In August 1992, Perez, was administratively discharged from the United States Navy ("Navy") under Other Than Honorable Discharge by Reason of Misconduct Due to Commission of a Serious Offense. Plaintiff had served twelve years in the United States Navy at the time of his discharge. Having first enlisted in 1979, Perez worked as a petty officer on active duty and, at the time of his discharge, held the rank of petty officer second class. As defendants readily ac-

knowledge, Perez was an outstanding sailor. Indeed, throughout his service with the Navy, Perez received numerous excellent evaluation reports, and was regularly recommended for advancement. (See A.R. 63–94).

In July 1985, plaintiff married Petty Officer Kathleen Pedigo ("Pedigo") who, like plaintiff, was also on active duty at the time of the events in question. Together, they had one child, Blake Perez ("Blake"). On March 9, 1990, plaintiff and Pedigo were divorced and Pedigo was awarded custody of Blake. She subsequently requested, and was granted, permission to transfer to Italy. In late October 1990, Perez also requested a transfer to Italy to be near his son. (A.R. 377). He received letters in support of his transfer request from several Navy counsellors. (A.R. 378–81).

On Nov. 5, 1990, while at a military day care center in Italy, a day care worker, Marisa Minton, claimed to have found Blake imitating anal intercourse with another one of the children. (A.R. at 476). Blake was four years old at the time. When Ms. Minton asked Blake about what he was doing, he reportedly said: "My daddy does it to me all the time. He hugs me and tells me not to tell my Mommy." (A.R. at 476). After being informed of her son's statements and conduct, Pedigo claimed that Blake had twice before made comments to her indicating that he may have been sexually abused by his father. According to Pedigo, Blake told her in July 1990 that "Daddy touched my pee-pee" and on another occasion said that "Daddy puts his pee-pee in my mouth." (A.R. 512).

Initially, the allegations against plaintiff were investigated by the Naval Criminal Investigative Service (NCIS). After this preliminary investigation, plaintiff's Commanding Officer, Personnel Support Activity, Great Lakes, Illinois ("Commanding Officer") preferred charges against Perez. Plaintiff was charged with one count of sodomy under 10 U.S.C. § 925 and six counts of indecent

---

1. In his response to Defendant's Motion for Summary Judgment, plaintiff purports to cross-move for summary judgment. Leave to file the cross-motion was neither sought nor granted. No separate motion has been filed, and no specific relief has been requested in the response brief.

acts or liberties with a child under 10 U.S.C. § 934.[2]

In September 1991, the Commanding Officer convened a pretrial investigation in accordance with 10 U.S.C. § 832 ("Article 32 investigation") to determine whether a general court-martial was warranted under the circumstances. (A.R. at 397–470). The investigation lasted three days and plaintiff was represented by military counsel throughout the proceeding.

At the investigation NCIS Investigating Officer Ursula Pedrillo and Pedigo testified. (A.R. at 403–406). Statements from the social worker and counselor involved with Blake Perez were admitted and made part of the record as were clinical notes of treatment, letters from the plaintiff to Blake, statements from people who had contact with Blake at the day care center. (A.R. at 467–512). After the Article 32 hearing, the Investigating Officer, Ursula Pedrillo, recommended that charges not be referred to a General Court Martial. Consequently, the Commanding Officer chose an administrative separation procedure, instead of convening a general court martial or taking no action whatsoever.[3]

Paragraph 1c of MILPERSMAN § 3630600 permits separation for:

Commission of a serious military or civilian offense, if:

(1) the specific circumstances of the offense warrant separation; and

(2) a punitive discharge would be authorized by the Manual for Courts–Martial for the same or a closely related offense.[4]

When a member is processed for commission of a serious offense, as was the case here, Paragraph 5c of MILPERSMAN § 3630600 requires that the Administrative Board Procedure be followed. The Administrative Board Procedure is set forth in MILPERSMAN § 3640300. This section provides *inter alia* that:

When an Administrative Board is required, the member shall be notified in writing by their commanding officer of the following matters . . . . :

a. The basis of the proposed separation, including the circumstances upon which the action is based, and referenced to the applicable reason for separation in [Milpersman]. . . .

d. A statement of the respondent's right to consult with counsel. . . .

h. A statement of the respondent's right to representation at the Administrative Board by qualified counsel.

MILPERSMAN § 3640300.

On October 30, 1991, in accordance with the notice requirements of MILPERSMAN § 3640300, plaintiff received "Notice of Notification Procedure Proposed Action". Though the notice erroneously referenced MILPERSMAN § 3630650 (separation in lieu of court martial), the court is satisfied that plaintiff was well aware of the administrative nature of the separation proceeding he was facing.[5]

In January 1992, an Administrative Discharge Board was convened to hear the charges against plaintiff. (A.R. 219–323). The government counsel introduced eight ex-

---

**2.** Each of these counts is an offense punishable through involuntary discharge from the military pursuant to 51 Article 125 and 87 Article 134 of the Manual for Courts–Martial. (Defendant's Memorandum in Support of Motion for Summary Judgment at 2).

**3.** Plaintiff vigorously but erroneously asserts that he was actually subject to a "separation in lieu of court martial" pursuant to Naval Military Personnel Manual ("MILPERSMAN") § 3630650, not the administrative separation procedure provided for in MILPERSMAN § 3640300. However, the "separation in lieu" of court martial proceeding can only occur after formal charges have been preferred against a service member. No such formal charges were brought here. More-

over, unlike an administrative discharge proceeding, a separation in lieu of court martial can only be initiated at the service member's request. MILPERSMAN § 3630650.

**4.** The Manual for Courts–Martial allows for the dishonorable discharge of persons found guilty of sodomy, 51. Article 125, and indecent acts or liberties with a child, 87 Article 134. Appendix 1 to Defendant's Memorandum in Support of Defendant Motion for Summary Judgment at 2.

**5.** During voir dire, plaintiff's counsel asked all three members of the board whether they had ever sat on or had any other experiences with an Administrative Discharge Board. (A.R. at 222, 224, 226).

hibits including the transcript of the earlier Article 32 pretrial investigation. (A.R. at 387–512). The government counsel also introduced testimony by a social worker, Mr. Malo, who managed the Navy Family Advocacy program. Malo explained the program's procedures for handling cases where child molestation has been alleged, and how he handled the Perez case. (A.R. at 226–237, 250–270). The plaintiff introduced eleven exhibits. (A.R. at 229). Plaintiff's witnesses included his attorney who handled the divorce action and friends who testified about his relationship with his son Blake and his ex-wife Pedigo. (A.R. at 237–50, 270–84). Perez also testified on his own behalf, describing his relationship with this son, his consultations with the social worker, Mr. Malo, and his attempts to have a polygraph examination. (A.R. at 284–1310).

Following the conclusion of the hearing, the Board deliberated for ten minutes and found, by a vote of 3 to 0 that plaintiff had committed misconduct due to commission of a serious offense for which he should be separated from the Navy with an Other Than Honorable Discharge. (A.R. at 218, 323). These recommendations, along with Perez' counsel's letter of deficiencies were then forwarded to Perez' Commanding Officer. The Commanding Officer adopted the recommendations, and on May 5, 1992 the Chief of Naval Personnel ordered that Perez be separated from the Naval Service with Other than an Honorable Discharge. PN2 Perez was ultimately discharged on August 5, 1992.

Following his discharge, plaintiff filed suit in this court requesting review of the Board's decision. Defendant subsequently filed the instant motion to dismiss or, in the alternative, for summary judgment.

## DISCUSSION

### I. Motion to Dismiss

As a preliminary matter, defendant contends that this suit should be dismissed because plaintiff has not exhausted all available administrative remedies. In light of the recent Supreme Court decision in *Darby v. Cisneros*, —— U.S. ——, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), this court finds otherwise. In *Darby*, the Court ruled that federal courts have no authority to require a plaintiff to exhaust available administrative remedies before seeking judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, ("A.P.A.") [6] unless the statute or agency rules specifically mandate exhaustion as a prerequisite to judicial review. *Id.* at —— – ——, 113 S.Ct. at 2543–45.

Here, as the government points out, and plaintiff himself concedes (Complaint at ¶ VI), Perez *could have* appealed the Board's decision directly to the Board for Correction of Naval Records ("BCNR"). Established pursuant to 10 U.S.C. § 1552,[7] BCNR has broad equitable powers to correct service member's official military records. In *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Supreme Court summarized BCNR's authority as follows:

> The Board for Correction of Naval Records, composed of civilians appointed by the Secretary of the Navy, provides another means by which an aggrieved member of the military 'may correct any military record ... when [the Secretary of the Navy acting through the Board] considers

---

**6.** The applicable judicial review provision of the A.P.A. provides that:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires

by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704.

**7.** 10 U.S.C. § 1552(a) provides in pertinent part:

> [t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.... such corrections shall be made by the Secretary acting through boards of civilians of the executive part of the military department.

it necessary to correct an error or remove an injustice.'.... Under the Board's procedures, one aggrieved as respondents claim may request a hearing; if the claims are denied without a hearing, the Board is required to provide a statement of its reasons.... The Board is empowered to order retroactive back pay and retroactive promotion. Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence.

*Id.* at 303, 103 S.Ct. at 2367.

 Indeed, by exhausting his administrative remedies, Perez might have saved this court, the government, and himself considerable time and expense. The exhaustion doctrine provides an agency with an opportunity "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise and to compile a record which is adequate for judicial review." *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Yet, critically, nothing in the applicable statute, 10 U.S.C. § 1552 or regulations, 32 C.F.R. Part 732, *requires* Perez to avail himself of the BCNR's broad remedial powers. Having "exhausted all administrative review *expressly prescribed* by statute or agency rule," *Darby,* —— U.S. at ——, 113 S.Ct. at 2544 (emphasis added), Perez is entitled to seek direct judicial review of the Board's decision as a final agency action.

Understandably, defendant attempts to distinguish *Darby,* arguing that the *Darby* Court was not confronted with prior precedent recognizing the military's special status as an agency apart with its own "comprehensive internal system of justice to regulate military life". (Response at 5, *quoting Chappell,* 462 U.S. at 302, 103 S.Ct. at 2367).[8] *See also Goldman v. Weinberger,* 475 U.S. 503, 506–08, 106 S.Ct. 1310, 1312–14, 89 L.Ed.2d 478 (1986) (noting generally the considerable deference courts have shown the professional judgment of military authorities); *Department of Navy v. Egan,* 484 U.S. 518, 530, 108 S.Ct. 818, 825, 98 L.Ed.2d 918 (1988) ("[u]n-

less Congress has specifically provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national·security affairs"). In light of these "special considerations" present here but not present in *Darby,* the government asserts that the Court's ruling in *Darby* is not applicable to the instant case.

Defendant reads *Darby* too narrowly. Nothing in the Court's decision leads this court to believe that *Darby* is limited to H.U.D. specifically, or to non-military agencies generally. Throughout *Darby,* the Court, through Justice Blackmun, speaks in general terms of all agencies without distinguishing between those involved in military matters and those which are not. In fact, in the few months since *Darby* was decided, federal courts have applied its holding to disputes involving a variety of federal agencies; none of these cases suggests that *Darby's* holding is limited to only certain types of agencies. *See Ciba–Geigy Corp. v. Sidamon–Eristoff,* 3 F.3d 40 (2nd Cir.1993) (federal jurisdiction is contingent upon administrative exhaustion because of relevant statutes and regulations promulgated by the Environmental Protection Agency); *McDonnell v. United States,* 4 F.3d 1227 (3rd Cir.1993) (subject matter jurisdiction denied over Freedom of Information Act requests from the Federal Bureau of Information because of failure to exhaust statutorily mandated administrative appeals); *Western Shoshone Business Council v. Babbitt,* 1 F.3d 1052 (10th Cir.1993) (in suit against the Department of the Interior, plaintiffs were not required to exhaust more than the statutorily mandated appeals); *Career Educ. v. Department of Educ.* 6 F.3d 817 (D.C.Cir.1993) (district court's decision vacated because appellant had not followed administrative procedures promulgated by Department of Education before being heard in federal district court).

While cognizant of the special nature of the armed services and the potential dangers of unwarranted judicial interference with mil-

---

8. The petitioners in *Darby* sought direct judicial review of a Department of Housing and Urban Development determination proposing to debar them from entering into various transactions with executive branch agencies. *Darby,* —— U.S. at ——, 113 S.Ct. at 2541.

itary activity, this court declines the government's invitation to carve out a special military exception to the Supreme Court's decision in *Darby*. In this regard, it is important to remember that *Darby* does not preclude agencies or Congress from making administrative exhaustion a prerequisite to federal jurisdiction. Rather, it simply demands that such prerequisites be made explicit by Congress (through statutes) or agencies (through rules), rather than by judges. Until such action is taken, military personnel like Perez will be entitled to seek direct judicial review of final military decisions, such as the discharge at issue here, without first exhausting all available administrative remedies.

## II. Summary Judgment

In the alternative, defendant has moved for summary judgment. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the primary purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

At the summary judgment stage the judge's role is not to "weigh the evidence and determine the truth of the . matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), 477 U.S. at 249, 106 S.Ct. at 2511. In deciding a motion for summary judgment, the court must review all evidence, draw all reasonable inferences, and resolve all doubts in favor of the non-moving party. *Id.* at 249, 106 S.Ct. at 2511; *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). If the moving party meets this initial burden, then the nonmoving party is required to designate specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ In the administrative context, summary judgment may be appropriate in suits seeking review of administrative decisions even though there is conflicting evidence presented at the administrative hearing.

*McCall v. Andrus*, 628 F.2d 1185, 1189 (9th Cir.1980).

## A. Due Process

Plaintiff alleges that his administrative discharge from the Navy violated his right to procedural due process. Conceding that the Navy regulations governing administrative discharges are facially valid, Perez asserts that he was nevertheless deprived of his due process rights through the Navy's failure to advise him of the nature of the charges against him, and its denial of his rights to confront his accusers, to be effectively represented by counsel, and to be tried by a fair and impartial jury. He also alleges that the Board's failure to make special findings of fact in support of its decision similarly constituted a violation of due process. (Pl. Response at 10–11). The government in turn responds that as an initial matter, Perez has no due process rights in his continued employment that could have been violated, and even if he did, the hearing Perez was afforded here more than satisfied the requirements of procedural due process requirements. (Def. Brief at 8).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Thus, as a threshold matter, the court must decide whether Perez has a property or liberty interest in his assignment with, or discharge from, the United States Navy. The court finds that he has both.

### Property Interest

■ "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it...." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See also Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1262 (7th Cir.1985). As the Court explained in *Roth*, "[p]roperty interests are created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

■ Numerous courts have examined the question of whether members or prospective members of the armed services have property interests in their employment in the military. As one would expect, the answer to this question has varied depending on the context in which it is raised. For example, courts have universally held that reservists do not have property interests in their continued employment. *See, e.g., United States ex rel Karr v. Castle,* 746 F.Supp. 1231 (D.Del.1990); *May v. Gray,* 708 F.Supp. 716, 720 (E.D.N.C.1988) (citing *Sims v. Fox,* 505 F.2d 857, 861 (5th Cir.1974); *Pauls v. Secretary of Air Force,* 457 F.2d 294, 295 (1st Cir.1972); *Coppedge v. Marsh,* 532 F.Supp. 423, 429 (D.Kan.1982); *Woodward v. Moore,* 451 F.Supp. 346, 347 (D.D.C.1978). These cases hold that under 10 U.S.C. § 681(a),[9] reservists serve at the pleasure of the Secretary concerned and thus can have no legitimate expectation of continued employment. The same rationale has supported similar rulings in cases where military officers have asserted property interests in their employment with the armed forces. "It is wellestablished law that military officers serve at the pleasure of the President and have no constitutional right to be promoted or retained in service and that the services of an officer may be terminated with or without reason." *Pauls,* 457 F.2d at 297 (citing *Reaves v. Ainsworth,* 219 U.S. 296, 306, 31 S.Ct. 230, 234, 55 L.Ed. 225 (1911)); *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). Courts have also held that there is no constitutional right to enlist or re-enlist in the armed forces. *See Lindenau v. Alexander,* 663 F.2d 68, 72 (10th Cir.1981) ("well established that there is no right to enlist in this country's armed services"). *See also Gant v. Binder,* 596 F.Supp. 757, 767 (D.Neb.1984); *Shaw v. Gwatney,* 584 F.Supp. 1357 (E.D.Ark.1984),

aff'd in part vacated in part, 795 F.2d 1351 (8th Cir.1986).

Property interests have, however, been found to exist in an enlisted member's continued employment with the military. *See, e.g., May,* 708 F.Supp. at 721. Unlike reservists or military officers who serve at the pleasure of the President or the Secretary of their branch of the service, enlisted members of the armed forces can only be discharged pursuant to the conditions set forth in 10 U.S.C. § 1169. This statute provides:

> No regular enlisted member of an armed force may be discharged before his term of service expires, except—
>
> (1) as prescribed by the Secretary concerned;
>
> (2) by sentence of a general or special court martial; or
>
> (3) as otherwise provided by law.

10 U.S.C. § 1169. Though clearly providing the military with wide latitude in fashioning disciplinary mechanisms, this statute by its express terms limits the circumstances under which enlisted members of the armed forces like Perez can be discharged. In so providing, it gives rise to a legitimate expectation, not merely an "abstract need or desire," that these members of the armed forces will only be discharged under the prescribed conditions. As the *May* court explained,

> This provision effectively limits the scope of any property interest in continued military employment. However, the phraseology of the statute does not completely defeat the recognition of such a property interest and may be considered within the protection of the Due Process Clause.

*May,* 708 F.Supp. at 721. Accordingly, the court finds that PN2 Perez has a property interest, albeit a limited one, in his retention as a petty officer in the United States Navy.

### Liberty Interest

■ The "liberty" guaranteed by the Fourteenth Amendment "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . .

---

9. 10 U.S.C. § 681(a) provides that: "Except as otherwise provided in this title, the Secretary

concerned may at any time release a Reserve under his jurisdiction from active duty."

and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Roth,* 408 U.S. at 572, 92 S.Ct. at 2706–07 (*quoting Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). As the Seventh Circuit has explained, a government employee's dismissal infringes a liberty interest where:

> " '(1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism, or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities.' "

*Hannon v. Turnage,* 892 F.2d 653, 660 (7th Cir.1990).

Several courts have held that servicemember's liberty interests may be infringed where the servicemember is discharged under circumstances that might affect his or her future employment prospects. For example, in *United States ex rel. Karr v. Castle,* 746 F.Supp. 1231, 1241 (D.Del.1990), held that a former member of the National Guard had established a liberty interest where he alleged that he had been less than honorably discharged on the basis of a false claim of substandard performance. Similarly, in *Casey v. United States,* 8 Cl.Ct. 234, 241 (1985), the court found that liberty interests were at stake where plaintiff was discharged for drug abuse. The court explained, "[a] 'stigma' may attach to a servicemember's discharge either from the characterization of the discharge or from the reasons recorded for the discharge, if such reasons present a 'derogatory connotation to the public at large.' " *Id.* at 241 (quoting *Birt v. United States,* 180 Ct.Cl. 910, 914, 1967 WL 8881 (1967)). *See also, May,* 708 F.Supp. at 722 (finding a liberty interest where plaintiff was discharged after allegedly failing a urinalysis test).

■ Here, Perez has been discharged under other than honorable circumstances for sexually abusing his four-year old son. He denies the charges. His good name, reputation, honor, and community standing are clearly at stake. Accordingly, the court finds that Perez has additionally established a liberty interest in his assignment with, and discharge from, the Navy.

Once it is determined that plaintiff is entitled to constitutional due process protections, "the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). "The timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738–39, 42 L.Ed.2d 725 (1975). "[T]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961). "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria Workers,* 367 U.S. at 895, 81 S.Ct. at 1748.

Plaintiff alleges that his due process rights were violated on several grounds. The court will address each in turn.

### 1. *Notice of Charges*

■ Plaintiff claims that the Navy failed to notify him of the charges against him prior to his discharge hearing. (Pl. Response at 10). Though plaintiff received the pre-hearing notice required under § 3640300, this notice merely stated (in pertinent part) "you are being considered for an administrative discharge from the Naval Service by reason of Misconduct due to Commission of a Serious Offense." (A.R. at 213). It did not detail the underlying charges. Nevertheless, after carefully reviewing the Administrative

Record, the court finds that plaintiff was well aware of the nature of the charges against him at the time of the separation proceeding.

Initially, the court notes that by January 1992, when the separation proceeding began, plaintiff had been the subject of a 16–month investigation focusing on his alleged sexual abuse of his son. In addition to having received copies of the charge sheet detailing the alleged conduct (A.R. 472–74), Perez was present throughout the three-day pretrial investigation hearing held in September 1991 where both live testimony and written evidence was offered regarding Perez' alleged sexual abuse of his son. (A.R. 397–470).

His familiarity with the charges against him is also evidenced by his lawyer's conduct at the January 1992 proceeding. At voir dire, his lawyer asked questions intended to elicit information about the board members' potential bias against accused sex offenders. (A.R. at 224–25). Questioning focused on issues surrounding children, visitation with children by non-custodial parents, and the sexual abuse of children. (*Id.*). She asked one member, "Have you had any background or experiences on Administrative Discharge Board [*sic*] or other experiences within the Navy that might cause you to have formed opinion [*sic*] on allegations of child sexual abuse?" (A.R. at 224). She asked another about any potentially relevant personal experiences:

> Counsel: Did you have an acrimonious divorce or do you have any personal experience such as the one which might be presented today?
> CWO2 Fryer: Your [*sic*] talking about with child abuse?
> Counsel: Yes.

A.R. at 225. *See also* A.R. 252 ("[w]e are here to determine whether or not there is [*sic*] sufficient allegations that you think warrant finding that discharge is appropriate in this case on the allegations of sexual abuse of this minor child ...").

Finding substantial evidence in the record indicating that both plaintiff and his lawyer were well aware of the nature of the charges

against him, the court rejects Perez' assertion that the Navy failed to provide him with adequate notice of the basis for the discharge proceedings as meritless.

### 2. *Right to Confront His Accusers, Trial By Jury*

Perez claims that his due process rights were also infringed through the Navy's denial of his "right" to confront his accusers and to a trial by jury. (Pl. Response at 10). As discussed below, these Sixth Amendment rights do not apply in the administrative discharge context. Procedural due process generally requires notice and some form of pre-deprivation hearing. *See Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990) (citing *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493). While the hearing should normally be sufficiently structured to allow the plaintiff an opportunity to be heard and to respond to the charges against him, it need not provide him with the same protections afforded defendants in criminal trials. *C.f. Rew v. Ward,* 402 F.Supp. 331, 344 (D.N.M.1975) (fact that a proceeding does not afford "the right to confront [one's] accusers and cross-examine them does not mean the procedures fall short of due process"). Defendant's refusal to allow Perez to confront all of the witnesses against him or provide him with a trial by jury did not violate procedural due process.

### 3. *Ineffective Representation*

Plaintiff asserts that his right to effective assistance of counsel was "stripped from him" at his separation proceeding. While the court appreciates plaintiff's vivid characterization of the alleged wrong, it is nonplussed by his failure to provide any specific support for his claim.[10] As the government points out, Perez' lawyer "cross-examined government witnesses, presented [her] own witnesses and attacked Kathleen Pedigo's credibility and character." (Reply at 7, citing A.R. at 219, 323, 382–85). Perez' claim of ineffective assistance of counsel in viola-

---

**10.** As the plaintiff in this matter, it is Perez' burden to show that he is entitled to the relief he seeks, not the court's to speculate as to the substance behind plaintiff's naked assertions.

tion of his right to procedural due process is denied.

#### 4. *Absence of Specific Findings*

 Finally, plaintiff argues that the Board failed to follow its own procedures in not stating the basis for its findings as required by MILPERSMAN § 3640350. The failure of an agency to follow its established procedures or regulations can constitute a denial of procedural due process. *Miller v. Henman,* 804 F.2d 421, 424 (7th Cir.1986). This general rule has been applied to military and civil agencies alike. *See May,* 708 F.Supp. at 722–23 ("due process does require that if the secretary concerned prescribes certain regulations under which Army personnel can be discharged, those regulations must be complied with"); *Epstein v. Commanding Officer,* 327 F.Supp. 1122, 1126 (E.D.Pa.1971) ("[a] violation of this duty set forth by the regulations themselves would constitute a violation of due process of law as the Army is bound to follow its own regulations"); *But see Bowens v. N.C. Dept. of Human Resources,* 710 F.2d 1015, 1019 (4th Cir.1983) ("agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process").

 PN2 Perez was separated from the Navy pursuant to MILPERSMAN §§ 3640300 and 3640350 (Def. 12(M) Statement of Material Facts). Paragraph 6a of § 3640350 requires that

[t]he record of proceedings of the Administrative Board shall contain:

a. A summary of the facts and circumstances, accompanied by the supporting documents, upon which the recommendation of the Administrative Board is based, including a summary of the testimony of all witnesses heard by the Board.

Having carefully reviewed the administrative record, the court is satisfied that this portion of Paragraph 6a of MILPERSMAN § 3640350 was satisfied. *See* A.R. at 219–323. However, this same paragraph further requires that:

In addition, the board shall state, on the record:

(1) the specific evidence it considered relating to each act, omission, or circumstance alleged in the notice;

(2) its determination for each alleged act, omission, or circumstance that the preponderance of the evidence does or does not support that act, omission, or circumstance; and

(3) the specific reason for separation set forth in the notice of proposed separation to which each act, omission, or circumstance supported by a preponderance of the evidence applies....

MILPERSMAN § 3640350, ¶ 6a.

As the Administrative Record clearly indicates, this procedure was not properly followed. Instead, after ten minutes of deliberation, the Board (through its President) merely stated that:

[b]y a vote of 3 to 0 the board finds that PN2 Perez has committed misconduct due to commission of a serious offense. By a vote of 3 to 0 the board recommends that PN2 Perez be separated from the Navy service by reason of misconduct due to commission of a serious offense and that the discharge be a discharge under Other Than Honorable conditions (OTH).

(A.R. at 323).

The Report of the Board is equally conclusory, providing only that "[b]ased on the preponderance of the evidence for each allegation, the board found that by a vote of 3 to 0, PN2 Luis Armando Perez has committed misconduct due to commission of a serious offense." (A.R. at 218). Nowhere does the Board state the "specific evidence it relied on in making this determination, or the "specific reason[s]" for separation. Yet, these specific findings and more were required under MILPERSMAN § 3640350. As discussed above, the Administrative Discharge Board was presented with both live and written testimony concerning the alleged misconduct. It also had the entire transcript of the Article 32 investigation. Clearly, the Board had ample evidence through which it could have satisfied the simple dictates of MILPERSMAN 3640350, ¶ 6a. Inexplicably, it failed to do so. In light of the Board's apparent failure to comply with its own regulations governing administrative discharge proceedings, and

the prejudicial effect this failure has had on plaintiff's ability to challenge the reasoning behind the Board's decision, the court denies defendant's motion for summary judgment against plaintiff on his procedural due process claim.

## B. *Arbitrary, Capricious, and Contrary to Law*

 As authorized by the Administrative Procedures Act, this court shall "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard for judicial review, as articulated by the Seventh Circuit in *Central States Enterprises, Inc. v. Interstate Commerce Com.*, 780 F.2d 664, 674 (7th Cir.1985),

> is necessarily narrow. '[A] court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made.'

"[T]he primary requirement of the 'arbitrary and capricious' standard of review is the 'simple but fundamental rule of law' that an 'agency must set forth clearly the grounds on which it acted.'" *Central States*, 780 F.2d at 674. Here, this general rule of law is reinforced by the Navy's own internal rules requiring the Discharge Board to articulate the basis for its action (see discussion above). As the court explained in *Alamo Express, Inc. v. United States*, 613 F.2d 96, 98 (5th Cir.1980):

> When an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed. (citation omitted). This is so even when the defined procedures "... generous beyond the requirements that bind such agency...." (citation omitted). For once an agency exercises its discretion and creates the procedural rules under which its desires to have its actions judged, it denies itself the right to violate these rules. (citation omitted). If an agency in its proceedings violates its rules and prejudice re-

sults, any action taken as a result of the proceedings cannot stand. (citation omitted).

*Alamo Express*, 613 F.2d at 98.

 Before it, the Administrative Discharge Board had sworn and unsworn written testimony, including the 73–page summarized transcript from the Article 32 investigation. In addition, the Board heard the oral testimony of Perez as well as character witnesses appearing on his behalf. It was well within the discretion of the administrative board to credit one side or the other. However, in so doing, the administrative board was required to articulate the basis for its findings. *C.f. Matlovich v. Secretary of the Air Force*, 591 F.2d 852 (D.C.Cir.1978). (vacating homosexual airman's involuntary discharge where discharge board had failed to articulate the basis for its determination that no exceptional circumstances warranted airman's retention in violation of Defense Department and Air Force directives); *Secora v. Fox*, 747 F.Supp. 406, 410–413 (S.D.Ohio 1989) (same). The Board's failure to comply with this simple but fundamental rule was not harmless error. Rather, by failing to state the underlying rationale for its decision, the Board has significantly impeded Perez' ability to challenge the basis for his discharge. *C.f. Matlovich*, 591 F.2d at 859. Defendant's motion for summary judgment on the grounds that the Board neither acted arbitrarily, capriciously, nor contrary to law, is denied.

## C. *Sixth Amendment Right to Confront Witnesses*

The Sixth Amendment to the United States Constitution requires that, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." *U.S. Constitution*, amend. VI.

 The plain language of the Sixth Amendment contemplates its application only in criminal proceedings. Furthermore, relevant caselaw makes it abundantly clear that Sixth Amendment rights do not attach in non-criminal proceedings. *Castaneda–Suarez v. Immigration and Naturalization*

*Serv.*, 993 F.2d 142, 144 (7th Cir.1993) ("[d]eportation hearings are deemed civil proceedings and thus aliens have no constitutional right to counsel under the Sixth Amendment."); *Camp v. United States,* 413 F.2d 419, 421 (5th Cir.1969) (Sixth Amendment right to counsel does not attach in non-criminal administrative proceedings before the Selective Service Board); *Schultz v. Wellman,* 717 F.2d 301, 304 (6th Cir.1983) (Sixth Amendment right to confront witnesses or compulsory processes was not applicable to administrative discharge proceedings of National Guard member because proceedings were not criminal in nature); *Savina Home Indus., Inc. v. Secretary of Labor,* 594 F.2d 1358 (10th Cir.1979) (Sixth Amendment jury trial protections did not apply in administrative proceedings of Occupational Safety and Health Administration). Nor is it enough that the same conduct which led to plaintiff's discharge could be the subject of criminal proceedings. *Argiz v. United States Immigration,* 704 F.2d 384, 387 n. 3 (7th Cir.1983).

Members of the armed forces may be subjected to "criminal prosecutions" through the Uniform Code of Military Justice, 10 U.S.C. §§ 801–940. This was not the basis of plaintiff's discharge. Instead, plaintiff was the subject of an administrative discharge procedure in accordance with Chapter 36 of the Milpersman. "An administrative military discharge is not criminal or quasi-criminal in nature, but is governed by traditional administrative law doctrine, tempered by reference to the unique circumstances of the military." *Schowengerdt v. United States,* 944 F.2d 483, 490 n. 9 (9th Cir.1991). Consequently plaintiff was not entitled to any Sixth Amendment protections in his discharge proceedings. Clearly, absent such a right, plaintiff's claim of its violation necessarily fails and summary judgment for defendant on this issue is appropriate.

### Conclusion

For the foregoing reasons, defendant's motion to dismiss is denied. Defendant's alternative motion for summary judgment is denied in part and granted in part. Plaintiff's "cross-motion" for summary judgment is denied pending the filing of a proper motion and supplemental briefing on the precise nature of the relief sought. A pretrial conference is scheduled for April 25, 1994 at 9:30 a.m.